UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. GHOLAMALI REZAEIRAD, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANTONY J. BLINKEN, *in his official* )<br>*capacity as Secretary of State*, )<br>)<br>Defendant. ) | Civil Case No. 23-1182 (RJL) |

MEMORANDUM OPINION

(August 12, 2024) [Dkt. #7]

Plaintiff Dr. Gholamali Rezaeirad brings this action against Secretary of State Antony Blinken, seeking to compel the U.S. Government to adjudicate his nonimmigrant visa application. He is an Iranian national who hopes to travel to the United States to visit his children and grandchildren. He alleges that the Government's failure to issue a final decision on his visa application after it has been pending for approximately 20 months constitutes unreasonable delay under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555 and 701, *et seq*. He also contends that the Government's decision to grant his wife's request for a visa, but not his, is arbitrary and capricious under the APA. The Government has moved to dismiss. For the following reasons, the Government's motion will be GRANTED.

I.  **Background**

   A.  **Statutory and Regulatory Background**

B-category visas are nonimmigrant "Visitor Visas" that allow a foreign citizen to temporarily visit the United States for business (B-1), pleasure (B-2), or both (B-1/B-2). *See* https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html; 8 U.S.C. § 1101(a)(15)(B).  All foreign citizens seeking a nonimmigrant visa must file an application and appear for an interview, unless they meet the criteria allowing the interview to be waived. 8 U.S.C. § 1202(a), (h); 22 C.F.R. §§ 41.102(a), (e)(3), 41.103(a)(1). After a noncitizen has "properly completed and executed" a "visa application," including the required interview, a "consular officer must issue the visa" or "refuse the visa." 22 C.F.R. § 41.121(a). "When a consular officer knows or has reason to believe a visa applicant is ineligible and refuses the issuance of a visa, he or she must inform the alien of the ground(s) of ineligibility (unless disclosure is barred under INA 212(b)(2) or (3)) and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal." *Id.* § 41.121(b).

Relevant here, Congress has mandated that any noncitizen that is a national of a country determined by the Secretary of State to be a state sponsor of international terrorism shall not be issued a nonimmigrant visa "unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate United States agencies, that such alien does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a). Since January 19, 1984, the Secretary of State has

designated Iran a "state sponsor of international terrorism." *See* https://www.state.gov/state-sponsors-of-terrorism.

### B. Factual and Procedural Background

Plaintiff Dr. Gholamali Rezaeirad is an eighty-two year old Iranian national who submitted a renewed application for a visitor visa in October 2022. *See* Complaint for Declaratory and Injunctive Relief under the APA ("Compl.") [Dkt. #1] ¶¶ 1, 5, 31. Dr. Rezaeirad received his bachelor's and master's degrees in electrical engineering from George Washington University in the 1970s. *Id.* ¶¶ 3, 32. He and his wife have frequently traveled to the United States on B-1/B-2 visitor visas to visit their daughter, son, and grandchildren, who live in the United States. *Id.* ¶¶ 2, 4, 35. He last visited the United States on a visitor visa in 2017. *Id.* ¶ 36.

Dr. Rezaeirad and his wife appeared for nonimmigrant interviews at the U.S. Consulate in Yerevan, Armenia, on November 2, 2022. *Id.* ¶¶ 10, 39. His wife's visa was approved, but his application was kept in administrative processing. *Id.* ¶¶ 10, 40, 41. The consulate asked for additional information, including his CV, a list of publications, his travel history, the purpose of his travel to the United States, and his military service, all of which he sent over by email. *Id.* ¶¶ 42, 43. He has no connections to the Iranian military. *Id.* ¶ 7.

On April 28, 2023, he sued Secretary of State Antony J. Blinken in his official capacity, citing violations of the APA. *Id.* ¶¶ 50–82. He brings two causes of action. First, he alleges that the consular officer's decision to place his application in further administrative processing after approving his wife's application constitutes arbitrary and

capricious action under 5 U.S.C. § 706(2)(A). *Id.* ¶¶ 50–64. Secondly, he argues that the delay in making a final decision on his visa application is unreasonable under 5 U.S.C. § 706(1). *Id.* ¶¶ 64–82. He claims that these failures have caused him unnecessary harm because they prohibit him, at his advanced age, from seeing his family in the United States. *Id.* ¶¶ 6, 47. He requests that this Court issue a declaratory judgment holding that the delay is unreasonable and ordering defendant to make a final decision on his visa application within seven days. *Id.* at 12. On June 27, 2023, the Government moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def.'s Mot. to Dismiss ("Mot.") [Dkt. #7]. Plaintiff filed his opposition on July 11, 2023. *See* Pl.'s Opp. to Def.'s Mot. to Dismiss ("Opp.") [Dkt. #8]. The Government filed its Reply on August 8, 2023. *See* Def.'s Reply in Supp. of Def.'s Mot. to Dismiss ("Reply") [Dkt. #10].

## II.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is a "threshold challenge to the Court's jurisdiction," requiring the Court to "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (quoting *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009)). When a defendant files a motion to dismiss under 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, that the Court has subject matter jurisdiction. *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 158 (D.D.C. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). At this stage, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint

liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Meanwhile, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Pitts v. District of Columbia*, 177 F. Supp. 3d 347, 357 (D.D.C. 2016) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). That is, the complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* at 570. In analyzing a motion to dismiss under Rule 12(b)(6), the Court similarly accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Aiteliyev v. Mayorkas*, --- F. Supp. 3d ---, 2024 WL 551683, at *4 (D.D.C. 2024). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. Analysis

#### A. The Court Has Subject-Matter Jurisdiction

The Government puts forth several arguments challenging this Court's subject-matter jurisdiction. However, these arguments have already been considered and rejected by many courts in this district.

First, the Government argues that as an unadmitted, nonresident noncitizen, plaintiff cannot establish standing. Mot. at 6–12. But while unadmitted, nonresident noncitizens lack standing to challenge final decisions on their visa applications, *see, e.g.*, *Polyzopoulos*

*v. Garland*, No. 20-cv-804, 2021 WL 1405883, at *7 (D.D.C. Apr. 14, 2021), "unadmitted nonresidents do have standing to challenge *delays* in the processing of their visa applications," *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *4 (D.D.C. Oct. 23, 2023). Because plaintiff is not alleging that he has a right to a visa, but that he has a right to a final decision on his visa application, he has standing.[1] *See Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).

Next, the Government argues that the complaint should be dismissed because the named defendant, the Secretary of State, cannot provide the relief requested. Mot. at 21–23. It argues that the INA, which "grants consular officers 'exclusive authority to review applications for visas, *preclud[es] even the Secretary of State* from controlling their determinations.'" *Id.* at 22 (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021)). However, "[c]ontrol over a consular officer's visa *determinations* . . . is not the same as control over the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022). The Secretary of State can provide relief by directing consular officers to adjudicate pending visa applications "within a reasonable time," 5 U.S.C. § 555(b). *Id.*; *see also, e.g., Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *4 (D.D.C. Feb. 12, 2024); *Khazaei*, 2023 WL 6065095, at *4.

---

[1] The Government asks this Court to take judicial notice of the fact that the State Department's Visa Status Check website says that plaintiff's application was "refused." Mot. at 4 n.2. Courts in this district understand this initial "refusal" to be a provisional denial, and the exact argument the Government makes here (that this "refusal" should be interpreted as a final decision) has already been rejected many times. *See, e.g., Khazaei*, 2023 WL 6065095, at *4–5. Furthermore, emails from the U.S. Consulate in Yerevan show that the consulate considers Dr. Rezaeirad's application to be in "administrative processing." *See* Opp. Ex. A [Dkt. #8-1].

6

Finally, the Government argues that plaintiff's claim is nonjusticiable because as a nonresident noncitizen, plaintiff cannot challenge a condition of entry—that is, eligibility under 8 U.S.C. § 1735(a). Mot. at 18–21. However, this argument is, again, based on the incorrect premise that plaintiff is challenging the basis for a final determination about his visa. Plaintiff is seeking to compel a determination on his visa application, not asking the Court to compel a different decision on a refused application. *See* Compl. at 12. As other courts in this district have found, "where applications are pending administrative processing, even if such processing was triggered by Section 1735, the review of their applications is not complete." *Fakhimi*, 2023 WL 6976073, at *5 (quotation omitted). "To the extent that the reason for the delay is to allow the Secretary to determine whether each [p]laintiff 'does not pose a threat to the safety or national security of the United States,' as required under Section 1735 before a visa can issue, [p]laintiffs' unreasonable-delay claims are still justiciable." *Khazaei*, 2023 WL 6065095, at *5.

Thus, the Court has jurisdiction to consider plaintiff's claim of unreasonable delay.

**B.     The Plaintiff Has Failed to State a Claim for Unreasonable Delay[2]**

Turning to the merits, plaintiff contends that the Government has unreasonably delayed the adjudication of his visa application, which has remained in administrative processing for approximately 20 months. He claims that this delay violates the APA, which requires agencies to "conclude" matters presented to them "within a reasonable time," 5

---

[2] The Government also makes another argument for why this case should be dismissed on the merits: because the claim is barred by the consular nonreviewability doctrine. Mot. at 23–27; *see Baan Rao*, 985 F.3d at 1027 ("Dismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)."). Because the Court dismisses plaintiff's unreasonable delay claim for other reasons, it declines to address this argument.

7

U.S.C. § 555(b), and which directs courts to "compel agency action . . . unreasonably delayed," *id.* § 706(1). Compl. ¶¶ 65–82. The Government moves to dismiss on the grounds that plaintiff cannot identify a nondiscretionary duty it was required to take and because the delay in processing plaintiff's application is not yet unreasonable. *See* Mot. at 12–17, 27–36. I agree, and as such the plaintiff has failed to state a claim for unreasonable delay.[3] How so?

In order to make out an unreasonable delay claim under the APA, plaintiff must first show "that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The Government argues that plaintiff's claim should be dismissed because it has "no clear duty to . . . adjudicate any specific visa application." Mot. at 14. However, "[g]ranting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action." *Khazaei*, 2023 WL 6065095, at *6. This action is required by both the APA and the State Department's

---

[3] Plaintiff also attempts to bring a claim for arbitrary and capricious treatment under the APA, arguing that "[t]he consular officer's decision to place Dr. Rezaeirad in administrative processing for more than six months after approving his spouse's application and without providing a reason for the disparate treatment constitutes arbitrary and capricious decision making." Compl. ¶ 62. Plaintiff has failed to state a claim for arbitrary and capricious treatment for several reasons. First, review under 5 U.S.C. § 706(2) requires "final agency action" and, as noted above, the Government has not yet made a final decision on plaintiff's visa. *See Lee v. Blinken*, No. 23-cv-1783, 2024 WL 639635, at *7 (D.D.C. Feb. 15, 2024) (quoting *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 620 (D.C. Cir. 2020)). Secondly, to the extent he seeks to contrast the delay in the processing of his visa application vis-à-vis the Government's decision to promptly grant his wife's request for a visa, he is both bringing a challenge to conditions of entry, which is nonjusticiable, and seeking to have this Court review the basis for the Government's decision to grant his wife's visa, which is shielded by the consular nonreviewability doctrine. *See Baan Rao*, 985 F.3d at 1024. Finally, the basis of his claim for arbitrary and capricious treatment is that his and his wife's applications are virtually identical and thus should be treated identically. *See* Compl. ¶¶ 62–63. However, not all allegations in the complaint are "entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dr. Rezaeirad and his wife are two different people, and thus the Government is not required to adjudicate those two different applications as if they are one and the same.

own regulations, which require that a consular officer "must . . . properly and promptly" process a visa application, and either "issue" or "refuse" a completed visa application. 22 C.F.R. §§ 41.106, 41.121(a); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (noting that 5 U.S.C. § 555(b) "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time'"). Thus, "granting or refusing a final visa application is a mandatory agency action," and a failure to do so in a reasonable time is reviewable under the APA. *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020); *see also Fakhimi*, 2023 WL 6976073, at *6; *Khazaei*, 2023 WL 6065095, at *6.

To evaluate the reasonableness of agency delay, courts in our Circuit examine the six factors set out in *Telecommunications Research & Action Center v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 815 (D.C. Cir. 2024) (quoting *TRAC*, 750 F.2d at 80). At the motion-to-dismiss stage, "courts in this District have regularly held that it is appropriate to evaluate the *TRAC* factors when determining if a plaintiff's complaint has stated sufficient facts to plead a plausible claim of unreasonable delay in the

9

immigration context." *Patel v. USCIS*, No. 22-cv-1931, 2023 WL 5833688, at *2 (D.D.C. Sept. 8, 2023); *see also Mokkapati v. Mayorkas*, No. 21-cv-1195, 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) ("[T]he majority view in this District is that application of the TRAC factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay.").

### 1.  *TRAC* Factors 1 and 2

The first two factors—whether Congress has provided a timeframe for making such decisions and whether any delay is reasonable—are often considered together, *see, e.g., Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021), and the first *TRAC* factor—whether the delay is reasonable—is considered the "most important" of the six, *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). In analyzing these factors, the Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Plaintiff admits that no statute sets out a timetable for adjudication of his visa application. Opp. at 21; *see also Fakhimi*, 2023 WL 6976073, at *7 ("[T]o the extent that the delay is caused by the need to make a determination under Section 1735, Congress has supplied no timeline for processing such determinations." (quotation omitted)). In such cases, "courts typically turn to case law as a guide" to determine the reasonableness of a visa-application delay. *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).

In general, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). "[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (quoting *Yavari v. Pompeo*, No. 19-cv-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)).

Here, plaintiff has been waiting for approximately 20 months. This delay is reasonable under the circumstances and by comparison to other cases in which Iranian citizens, who must overcome § 1735(a), have waited for final decisions on their visa applications. *See, e.g.*, *Yaghoubnezhad v. Stufft*, No. 23-cv-3094, 2024 WL 2077551, at *11–13 (D.D.C. May 9, 2024) (22 months not unreasonable); *Ahmadi*, 2024 WL 551542, at *5 (21 months not unreasonable); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (25 months not unreasonable); *see also Akrayi v. U.S. Dep't of State*, No. 22-cv-1289, 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023) (3 year delay for Iraqi citizen not unreasonable); *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 76 (D.D.C. 2022) (3 year delay for Pakistani citizen not unreasonable). Accordingly, the first two *TRAC* Factors favor the defendant.

### 2.   *TRAC* Factor 4

The fourth factor considers the effect that a ruling in plaintiffs' favor would have on the agency's competing priorities. "Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[ ] all others back one space.'" *Ahmadi*, 2024 WL 551542,

at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). "Relief that would simply reorder a queue of applicants seeking adjudication is generally viewed as inappropriate when no net gain in such adjudications is achieved." *Tate*, 513 F. Supp. 3d at 149 (quotation omitted).

This factor heavily favors the Government. *Id.* (citing *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100). Plaintiff does not even contest this point; he simply notes that the State Department has already "spent resources to interview and process [his] visa application and it has already issued his spouse's visa." Opp. at 22. However, consular "[p]rocessing capacity is presently a zero-sum game," so expediting review of plaintiff's application "would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (quoting *Khan v. Blinken*, No. 21-cv-1683, 2021 WL 5356267, at *4 (D.D.C. Nov. 17, 2021)). Furthermore, plaintiff has not alleged that the Government has "singled [him] out for mistreatment," which leaves "no basis for reordering agency priorities." *In re Barr Lab'ys*, 930 F.2d at 75, 76.

### 3.    *TRAC* Factors 3 and 5

The third and fifth factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiff alleges that the delay is prohibiting him from "visiting his children and grandchildren" and "disrupt[ing] plans for a family reunion in the United States." Compl. ¶¶ 45, 47. In his opposition, he simply states that "the harm from the delays are weighty." Opp. at 21. Although plaintiff's frustration is understandable, and his position is certainly

deserving of sympathy, his interests are no different than those of other foreign nationals applying for visas in the hopes of reuniting with their families. *See, e.g.*, *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) ("[T]he Court is also mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications." (quotation omitted)). These factors are, at best, neutral for plaintiff.

### 4. *TRAC* Factor 6

The final *TRAC* factor states that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. This requires the Court to "determine whether the agency has acted in bad faith in delaying action." *Fakhimi*, 2023 WL 6976073, at *11 (quoting *Gona v. USCIS*, No. 20-cv-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021)). This factor favors neither party. Plaintiff does not allege bad faith, and he does not address this factor in his opposition. As *TRAC* directs, the lack of allegations of impropriety does not weigh against plaintiffs, and therefore does not alter the Court's analysis.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED pursuant to Rule 12(b)(6). An order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge